[No. 25983. Department Two. March 27, 1936.]

J. J. RILEY et al., *Respondents,* v. PACIFIC OUTFITTING COMPANY, *Appellant.*[1]

[1]Reported in 55 P. (2d) 1058.

*Preston, Thorgrimson & Turner,* for appellant.

*G. D. Hile* and *John J. Kennett,* for respondents.

MAIN, J.—The purpose of this action was to recover damages for personal injuries. The cause was tried to the court and a jury, and resulted in a verdict in favor of the plaintiffs in the sum of $750. The defendant made a motion for judgment notwithstanding the verdict, which was denied, and, from the judgment entered upon the verdict, appeals.

The appellant, the Pacific Outfitting Company, is a corporation organized under the laws of this state, with a place of business in the city of Seattle, where it sells, at retail, ladies' and men's apparel. December 19, 1932, the respondent Grace Riley, who will be referred to as though she were the only party respondent, entered the store and inspected certain articles in the ladies' department, having in mind making purchases either on that day or at some future time. After looking over some articles, she went to the cashier's office, which was in the back part of the building and up a short flight of stairs, for the purpose of getting a check cashed. The space around the cashier's office and extending to the head of the stairs was covered with linoleum.

As the respondent was returning from getting the check cashed, she fell from the top of the stairs and sustained the injury for which recovery was sought. She says that she caught the heel of her right shoe on something extending up from the floor on which the linoleum was laid, and at the time her left foot was on the first step down.

Whether there was a metal strip on the tread, is in dispute. It is admitted that there was such a strip on

the facing of the steps. With reference to the manner of the happening of the accident, the respondent testified:

"Q. Now had you had occasion before that to notice what kind of an arrangement they had to bind the linoleum at the edge of the floor level just before you stepped down to the first step? A. Well, there was something there that caught my heel, that is all I know. I had often times noticed there were metal facings (indicating a metal strip on what could be called the facing of the tread, extending back up and over onto the surface of the tread)."

On cross-examination, the witness further testified as follows:

"I felt my heel catch on something up on the floor level of the cashier's floor. It was something that projected up. Q. And something that you saw projecting up? A. Well, it felt that way. Q. It felt like something was projecting. You did not go back and examine it, did you? A. No, sir. Q. So you really do not know what it was that your heel caught on if it caught on anything? A. Well, it caught on something. Q. You felt that it caught on something? A. Yes."

She further testified as follows:

"Q. You swear that there was a piece extending over on to the —— A. Yes. Q. And it was that piece that extended over —— A. Yes. Q. —— which you think caught your heel? A. Yes."

After the accident, there were three parallel scratches on the inside of the heel of the right shoe, and, as one witness said:

"They were heavier up at the top than they were at the bottom, in the nature of an exclamation point."

Immediately after the accident, the respondent stated that she had "caught her foot." The respondent, in her brief, states:

"Appellant seeks to make it appear that respondent's evidence merely showed a fall, and nothing else.

Mrs. Riley's statements upon cross-examination (St. 16, line 30 to St. 17, line 6) refute this and were in and of themselves sufficient to make a case for the jury on this point. In addition, her testimony as a whole, considered in the light of her *res gestae* statements, plus the marks on her shoe-heel, conclusively showed the cause of her fall."

But evidence which shows the cause of her fall does not establish liability, because the mere happening of the accident was not sufficient of itself to make out a case of negligence. The doctrine of *res ipsa loquitur* does not apply to a claimed defective condition of a stairway or floor in a building. *Chilberg v. Standard Furniture Co.*, 63 Wash. 414, 115 Pac. 837, 34 L. R. A. (N. S.) 1079; *Engdal v. Owl Drug Co.*, 183 Wash. 100, 48 P. (2d) 232; *Garland v. Furst Store*, 93 N. J. L. 127, 107 Atl. 38, 5 A. L. R. 275.

The cases of *Anderson v. McCarthy Dry Goods Co.*, 49 Wash. 398, 95 Pac. 325, 16 L. R. A. (N. S.) 931, 126 Am. St. 870, and *Wodnik v. Luna Park Amusement Co.*, 69 Wash. 638, 125 Pac. 941, 42 L. R. A. (N. S.) 1070, are not in point, because in each of those cases it was an instrumentality that caused the injury. In one, a basket used in an overhead carrier system fell and injured a customer; in the other, the head of a mallet flew off while being used in connection with a striking machine in an amusement park.

The law requires a storekeeper to maintain his storeroom, including stairways, in such a condition as a reasonably careful and prudent storekeeper would deem sufficient to protect customers from danger while exercising ordinary care for their own safety. He is not an insurer of the safety of the customers that enter the store. *Watson v. Zimmerman*, 175 Wash. 410, 27 P. (2d) 707; *Tyler v. Woolworth Co.*, 181 Wash. 125, 41 P. (2d) 1093.

Where negligence is predicated upon the alleged failure to keep the premises in repair, it is necessary, in order to establish liability, that it be shown that the defective condition has either been brought to the notice of the defendant or has existed for such time as would afford sufficient opportunity to make proper inspection and repair any defects that might exist.

In 45 C. J. 866, it is said:

"Where negligence is predicated upon the failure to keep the premises in repair, it must be shown that the defective condition has either been brought to the notice of defendant or has existed for such time as would have afforded sufficient opportunity to make proper inspection of the premises to ascertain their condition as to safety and to repair their defects. A like rule has been applied in the case of a slippery condition resulting from snow or ice, or water, or other substances, or to snow or ice falling from a roof."

In the case of *Schnatterer v. Bamberger & Co.*, 81 N. J. L. 558, 79 Atl. 324, Ann. Cas. 1912D, 139, 34 L. R. A. (N. S.) 1077, the defendant kept a department store, in which was a stairway connecting the first floor with the basement for the use of its customers. The plaintiff testified that, in treading on one of the steps in going down the stairway, the heel of her shoe caught in a brass nosing (originally attached to the edge of the wooden step to prevent its wear) which was loose, but was not then noticed by her, causing her to trip and fall down stairs. It was there said:

"When the plaintiff rested her case it had not appeared that the defendant company had been guilty of any want of reasonable care in the keeping of its store safe for her use, for the reason that she had failed to show that the defective condition of the brass edging which she said existed on the night of the accident of April 24th had either (a) been in fact brought to the previous notice of the defendant, or, failing in proof of such actual notice, that (b) the defect had existed for

such space of time before that occurrence as would have afforded the company sufficient opportunity to make proper inspection of its stairways to ascertain their condition as to safety, and to repair their defects. In the absence of proof of either, the legal *presumption* is that defendant had used reasonable care.''

The case of *Wiard v. Market Operating Corp.*, 178 Wash. 265, 34 P. (2d) 875, recognizes the rule that, before there can be liability for defective premises, there must be knowledge thereof by the owner or operator, or something which amounts to constructive notice.

There are cases, such as *Bennett v. Jordan Marsh Co.*, 216 Mass. 550, 104 N. E. 479, and *Theodore v. J. G. McCrory Co.*, 17 La. App. 684, 137 So. 352, which hold that the condition of the defect may be such as to indicate that it had existed for a sufficient length of time to have enabled the proprietor, had he exercised reasonable care and foresight, to have discovered it. This rule was applied, in one of the cases just cited, to a condition where the corrugated iron surface on the outer edge of the step of a stairway had been used for such a length of time that it had become a ''very slippery surface.'' In the other, a wooden floor in a storeroom had become ''so far decayed as to split up in fragments.'' There is nothing in the present case to bring it within the rule of the cases last cited.

There are some cases that appear to hold that the fact of the injury, traced to a particular defect, may make a *prima facie* case, but it is unnecessary to give further attention to these cases, because, as already pointed out, the rule in this case is otherwise.

It follows that, from the facts above stated and the testimony as to the manner in which the accident happened and the applicable rules of law, there was no question in this case to go to the jury.

The judgment will be reversed, and the cause re-

manded with directions to the superior court to dismiss the action.

TOLMAN, BLAKE, and BEALS, JJ., concur.

HOLCOMB, J. (dissenting)—In my opinion, on the facts stated in the majority opinion, there was a case made for the jury.

I therefore dissent.

[1]Reported in 55 P. (2d) 1050.