82 P.3d 244 (2003)
119 Wash.App. 807
Robert BARKER, a single person, Appellant,
v.
SKAGIT SPEEDWAY, INC., a Washington corporation; Respondent, and
Wade Flemming and Jane Doe Flemming, a marital community, Defendants.
No. 50458-4-I.
Court of Appeals of Washington, Division 1.
July 28, 2003.
Publication Ordered December 23, 2003.
*245 Joseph D. Bowen, Mount Vernon, WA, for Appellant.
Thomas Charles Stratton, Lisa Ann Liekhus, Eklund Rockey Stratton PS, Seattle, WA, for Respondent.
GROSSE, J.
Absent evidence that the premises owned and operated by Skagit Speedway, Inc. were not reasonably safe, that warnings were inadequate, or that Skagit Speedway, Inc., was alerted to a foreseeable risk or danger, there was no duty to protect Robert Barker from the actions of race participants after the conclusion of racing.

FACTS
Skagit Speedway, Inc. (hereinafter Skagit Speedway), owns and operates an oval dirt automobile race track known as the Skagit Speedway. In 1999, the pit area was located in the center of the track. Skagit Speedway conducts sprint car races at the speedway on weekends and allows patrons to camp on one end of an outer parking lot area beyond the track. Skagit Speedway also allows and invites patrons to go into the pit area after the races.
On August 14, 1999, as he had done many times before, Robert Barker went to the speedway and set up camp. He attended the races which ended around midnight. After the races the spectators were allowed into the pit area to view the cars and speak to the drivers. Warning signs were posted around the track, including signs that warned patrons who entered the pit area did so at their own risk and that the use of caution was suggested. As was Skagit Speedway's custom, no sprint cars were allowed on the track at the time fans entered the pit area. A red track light was used to alert drivers, their crews, and patrons that no sprint cars were to be moved or moving and that the cars were to be parked in the pit area for at least 30 minutes after the races to allow the engines to cool and the patrons to enter. After approximately 30 minutes, this track light switched to green and the pit crews would begin the process of moving the cars from the pit area for loading onto trailers. Only a few cars were moved at a time.
Approximately 30 minutes after entering the pit area, Barker observed a number of vehicles being pushed slowly out of the pit area along the usual route. The warning light had turned green and nothing unusual was happening as cars moved out of the pit area. Barker chose to stay in the pit area after the 30-minute cooling-off period. No announcement was made by speedway personnel that the cooling-off period was over and it was not unusual that patrons stayed beyond the half-hour period. Barker admitted he had been in the pit area on at least 50 occasions and he knew that the 30-minute cooling-off period was over and that cars were being pushed from the pit area for loading.
While one of the cars was pushed slowly from the pit area, Barker was struck from *246 behind and his foot was run over by a wheel of the car. Barker limped off and allegedly no one but Barker knew he had been hit. Barker was not able to positively identify the car that hit him, but through process of elimination he determined it was a car owned by defendants Flemming.
Wade Flemming raced for prize money at the speedway. He paid an entry fee for the opportunity to race for money. His pit crew moved and loaded the car onto the trailer, although general movements in and out of the center pit area were controlled by a pit boss, gate operator, and flagger who worked for the speedway.
Barker sued Skagit Speedway and the Flemmings for injuries suffered after being struck by a race car owned by the Flemmings and operated by agents of the Flemmings at the time of the incident.[1] He claims that Skagit Speedway employed Flemming to race at the track and that it was directly liable for his injuries through its negligence. He claims that Skagit Speedway breached a duty to him, as a business invitee, causing his injury.
Skagit Speedway filed a motion for summary judgment. The trial court granted it and dismissed Barker's claims with prejudice. A motion for reconsideration was denied and Barker appeals.

DISCUSSION
The usual standard of review for summary judgment applies.[2] To prove negligence, a plaintiff must establish the existence of a duty, a breach of that duty, resulting injury, and proximate causation between the breach of the duty and the resulting injury.[3]
Barker asserts that section 343 of the Restatement (Second) of Torts (1965)[4] creates a duty owed to him by Skagit Speedway. The duty set forth in the Restatement is one of reasonable care to invitees regarding the condition of the land, but if, and only if, the owner should have realized the unreasonable risk and thereafter failed to protect the invitee.[5]
Here, as premises owner, Skagit Speedway, had a duty to exercise ordinary or reasonable care to protect Barker, and other *247 business invitees, from harm.[6] The general rule governing liability for the failure to maintain business premises in a reasonably safe condition requires that the plaintiff prove (1) the unsafe condition was caused by the proprietor or its employees, or (2) the proprietor had actual or constructive knowledge of the dangerous condition.[7] It is also true, however, that owners of property are not insurers against all happenings that occur on the premises.[8]
The owner's duty is to exercise reasonable care for the invitee's protection. That obligation extends "to everything that threatens the invitee with an unreasonable risk of harm."[9] A business owner has a duty to inspect in order to discover possible dangerous conditions of which it does not know, and take reasonable precautions to protect the invitee from dangers that are foreseeable from use of the property. But there is no liability for harm from conditions for which no unreasonable risk is to be anticipated.[10]
Here, Skagit Speedway did not have a duty to protect Barker from negligent or intentional acts of third parties. Barker failed to present any evidence that Skagit Speedway's premises were unreasonably safe, that the warnings were inadequate, or that the conditions at the time of the accident were such to alert speedway personnel that there was a risk of foreseeable danger.[11]
Further, Barker was admittedly aware that after the expiration of the 30-minute period after the races, sprint cars are pushed out of the pit area. He had been attending races at the speedway for a number of years, indicated he had entered the pit area approximately 50 times, and was or had been a season ticket holder at the speedway. He admitted he saw cars being moved and loaded before the incident in question. Washington courts have long held that there is no duty to warn a business invitee about conditions of which the invitee has actual knowledge.[12] To require Skagit Speedway to warn patrons present while sprint cars are being moved and loaded on trailers that they might be hit by a car being pushed would be a futile warning because the risk is so obvious and well known. This court declines to impose a duty to warn of a risk as obvious as this one.[13]
Viewing all the facts of the case in a light most favorable to Barker, Skagit Speedway is entitled to judgment in its favor as a matter of law on the issue of direct liability.[14] The trial court did not err.
Barker also claims that Skagit Speedway should be found vicariously liable for the negligence of the pit crew handling the car that struck him. Barker contends that Skagit Speedway had an agency relationship with Wade Flemming and his pit crew sufficient to render the speedway liable. The threshold inquiry with regard to agency is the relationship between the parties. "Before the sins of an agent can be visited upon his principal, the agency must be first established."[15] *248 Barker had the burden to set forth facts to establish a prima facie existence of an agency relationship.[16] Under Washington law, an agency relationship is created, either expressly or by implication, "`when one party acts at the insistence of and, in some material degree, under the direction and control of another.'"[17] Consent between the parties and control are the essential elements of an agency relationship.[18] Control establishes agency only if the alleged principal controls the manner of performance.[19]
Barker failed to present evidence of the existence of an agency relationship between Skagit Speedway, Wade Flemming, or Flemming's pit crew. First, Barker does not present evidence regarding the actual identity of the person(s) pushing or steering the sprint car at the time it was being moved. He merely alleges that it was the negligence of members of the pit crew which handled the car that struck him. But an allegation of the fact that Skagit Speedway may have overseen the sporting event itself does not equal control over the owner of the car, the driver, or the pit crew of the car's owner as to how the car is moved from the pit area to its trailer. Barker does not set forth any evidence of an agreement or consent between the speedway and Flemming or his crew as to the creation of an agency. There is no credible evidence of any agency or employment in this case. Skagit Speedway is not responsible for the acts of Flemming or the unidentified members of his pit crew that were moving the sprint car. The trial court did not err and summary judgment in favor of Skagit Speedway is affirmed.
BECKER, C.J., and AGID, J., concur.
NOTES
[1] The record notes that the Flemmings are residents of Canada. The record is silent as to whether the Flemmings were ever served.
[2] When reviewing an order of summary judgment brought under CR 56, this court engages in the same inquiry as the trial court. Wilson v. Steinbach, 98 Wash.2d 434, 437, 656 P.2d 1030 (1982). The reviewing court considers the facts in the light most favorable to the nonmoving party. Summary judgment is appropriate if the pleadings, affidavits, depositions, and admissions on file show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. CR 56(c). The moving party bears the initial burden of showing the absence of an issue of material fact. If the moving party is a defendant who meets the initial burden, then the inquiry shifts to the party with the burden of proof at trial. If that party fails to make a showing sufficient to establish of an element essential to that party's case, and on which that party bears the burden of proof at trial, then the trial court should grant the motion. See Right-Price Recreation, L.L.C. v. Connells Prairie Cmty. Council, 146 Wash.2d 370, 381-82, 46 P.3d 789 (2002) (citing Young v. Key Pharms., Inc., 112 Wash.2d 216, 225, 770 P.2d 182 (1989) and Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).
[3] Schooley v. Pinch's Deli Mkt., Inc., 134 Wash.2d 468, 474, 951 P.2d 749 (1998).
[4] Section 343 states:

A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he
(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
(c) fails to exercise reasonable care to protect them against the danger.
[5] In its argument, Skagit Speedway cites a case regarding the duty of a landowner with respect to a duty to protect the servants of another from his or her own master's negligence. Those are not the facts of this case. However, that case and others citing to it reveal that in the event there is no defective or dangerous condition in the premises itself, as opposed to work or activities being performed on the premises in a negligent or dangerous way by third parties, the trial court does not err in holding that the landowner is not liable. Phillips v. Kaiser Aluminum & Chem. Corp., 74 Wash.App. 741, 749, 875 P.2d 1228 (1994).
[6] Younce v. Ferguson, 106 Wash.2d 658, 667, 724 P.2d 991 (1986).
[7] Coleman v. Ernst Home Center, Inc., 70 Wash. App. 213, 217, 853 P.2d 473 (1993).
[8] See Fernandez v. State ex rel. Dep't of Highways, 49 Wash.App. 28, 36, 741 P.2d 1010 (1987).
[9] W. Page Keeton et al., Prosser and Keeton on Torts § 61, at 425 (5th ed.1984).
[10] See Coleman, 70 Wash.App. at 222-23, 853 P.2d 473.
[11] A claimant must come forward with some evidence that the landowner failed to act reasonably under the circumstances. Mucsi v. Graoch Assocs. Ltd. P'ship No. 12, 144 Wash.2d 847, 862, 31 P.3d 684 (2001). Here, Barker does not present any evidence that Skagit Speedway did not act reasonably.
[12] Dickinson v. Tesia, 2 Wash.App. 262, 264, 467 P.2d 356 (1970).
[13] See Zenkina v. Sisters of Providence of Wash., Inc., 83 Wash.App. 556, 566, 922 P.2d 171 (1996) (finding no duty to require hospitals to warn that a person in an emergency room might faint at the sight of some procedures).
[14] Even if this court chooses to believe there is some question of fact, a question of fact may be determined as a matter of law when reasonable minds can reach but one conclusion on the matter. Ruff v. County of King, 125 Wash.2d 697, 703-04, 887 P.2d 886 (1995) (citing Hartley v. State, 103 Wash.2d 768, 775, 698 P.2d 77 (1985)).
[15] Matsumura v. Eilert, 74 Wash.2d 362, 363, 444 P.2d 806 (1968).
[16] Stansfield v. Douglas County, 107 Wash.App. 1, 17, 27 P.3d 205 (2001).
[17] Stansfield, 107 Wash.App. at 17, 27 P.3d 205 (quoting Hewson Constr., Inc. v. Reintree Corp., 101 Wash.2d 819, 823, 685 P.2d 1062 (1984)).
[18] Nordstrom Credit, Inc. v. Dep't of Revenue, 120 Wash.2d 935, 941, 845 P.2d 1331 (1993); Moss v. Vadman, 77 Wash.2d 396, 403, 463 P.2d 159 (1969).
[19] Uni-Com N.W., Ltd. v. Argus Publ'g Co., 47 Wash.App. 787, 796-97, 737 P.2d 304 (1987) (citing Bloedel Timberlands Dev., Inc. v. Timber Indus., Inc., 28 Wash.App. 669, 674, 626 P.2d 30 (1981)).